Good morning, Your Honours. Good morning. Eric Schnaufer for a plaintiff appellant, Rebecca Morgan. I'd like to reserve about three minutes for rebuttal. The parties agree that Ms. Morgan could not perform her past relevant work at Step 4 of the well-known five-step sequential evaluation. The parties also agree that Ms. Morgan could not perform two of the three jobs underlying the ALJ's Step 5 finding of non-disability. There is thus only one remaining job, the job of assembler, for the ALJ's decision. Morgan proved that she lacked the residual functional capacity to perform that assembler job. Morgan will now address the ALJ's error related to reliance on a non-physician adjudicator's determination. Substantial evidence does not support the ALJ's residual functional capacity assessment for an exertionally light work because the ALJ erroneously relied on the determination of non-physician adjudicator, Wayne S. Rhodes, as substantive evidence. In September 2005, non-physician adjudicator Rhodes determined that Ms. Morgan could perform a wide range of light work. The ALJ accorded the determination, quote, substantial weight, end quote. Essentially, the ALJ adopted it. The ALJ's physical residual functional capacity assessment reflects in large part the non-physician adjudicator's determination. It seemed there was obviously some confusion perhaps in her mind because she called him Dr. Rhodes and he's not, of course, a doctor. The question I have is what is the legal effect, then, of Dr. Hoskins basically saying kind of on a rubber stamp this? Well, there's two legal principles. One is the Chenery Doctrine. Because the ALJ expressly referred to Dr. Rhodes four times, it did not mention at all Dr. Hoskins' affirmation. The court may not affirm the ALJ's decision based upon Dr. Hoskins' affirmation. But don't we still have a harmless error doctrine so that I think even in Chenery cases, it says as long as the decision-maker's pathway can reasonably be discerned, then we don't invalidate it. We're not bound by Chenery. And here, where you have a doctor who adopts Rhodes' statement, it seems, and we know that the ALJ adopted that, it's hard to say that we can't discern what his pathway is. Well, as the Chenery Doctrine is longstanding is similar to the harmless error doctrine. One does not defeat the other, including in Molina. Under this court's decision in Conant, a court may not rely on evidence an ALJ did not discuss to affirm an ALJ's decision. There's a substantial difference, a significant difference, between Mr. Rhodes' determination and Dr. Hoskins' affirmation. So if Rhodes' determination, I was just looking at it from another perspective, if Rhodes had said the person at issue is very disabled, and a doctor had affirmed, yes, I adopt that, and the ALJ mistakenly relied on the non-physician, wouldn't it be an error for us to ignore what the other doctor had said, that it had agreed? The Chenery Doctrine prohibits a court from relying on evidence that the ALJ did not discuss. If this court... Is it evidence or grounds? Actually, in Conant, it talks about discussing evidence, specifically in evidence. And here, since there's no, on the text of the ALJ's decision, there's no evidence that the ALJ actually understood Dr. Hoskins' affirmation. In any case, there are four reasons why weighing, in the first instance, Dr. Hoskins' affirmation should result in more weight being accorded to treating physicians, Dr. Ely and Dr. Olson's opinions. First and foremost, under the treating physician rule, generally more weight is accorded to the opinion of a treating physician than either an examining or non-examining source. Dr. Hoskins never examined, never treated Morgan. In addition, a physician's opinion is evaluated by reference to the explanation that the physician provides under the Ninth Circuit law. And here, we have a summary affirmation, a one-sentence affirmation by Dr. Hoskins, competing with the detailed declarations of two treating physicians, including a treating pain management specialist. Also, if the evidence is being weighed in the first instance, the physician's expertise must be considered. And here, we have unknown expertise of any of Dr. Hoskins competing with the expertise of Dr. Olson in pain management and also in treating specifically fibromyalgia patients. Also, Dr. Hoskins did not consider arguably the most important evidence in the case, which is normally the treating physician's opinions, which came, you know, after his summary affirmation. What you're really saying is that even if somehow we could get by Chenery and look at this other ground, that we really can't do that because accepting Dr. Hoskins would require you. It's so interrelated with all of the other findings that we would, in effect, be making findings on appeal. That's essentially what you're saying. Yes. It would involve a de novo fact finding by this Court, which I think the Court should hesitate to do. But even if the Court, you know, did proceed down that path, I believe that the error would be, you know, the Court should resolve the conflict in favor of the two treating physicians. In any case, I think that the ALJ's here, the ALJ's mistaken reliance on Mr. Rowe's determination, as those of a physician, was harmful under this Court's decision in Molina for at least- Are you saying that the ALJ didn't give legitimate, specific reasons for rejecting the other physicians, Ely and the like? Was there an error in how the ALJ- Yes. In the brief, we present a separate argument explaining why the ALJ did not give legally sufficient reasons, either clear and convincing, specific and legitimate reasons for rejecting both the opinions of Dr. Olson and Dr. Ely. The ALJ didn't evaluate, for example, Dr. Olson's expertise. The ALJ, in a related argument of fibromyalgia, misconstrued the attended findings for fibromyalgia. Therefore, he could not properly evaluate Dr. Olson's opinions based upon the existence of fibromyalgia. Also, the ALJ's analysis of the opinions was defective, because at one point, the ALJ's opinion or rationale was actually circular, saying that the ALJ- the physician did find, quote, unquote, significant limitations in a clinical examination when Ms. Morgan had the specific clinical findings that tended to fibromyalgia consistent with her symptoms. And so we have separately challenged the ALJ's evaluation of both Dr. Olson's and Dr. Ely's opinions. And so those are not legally sufficient, apart from the ALJ's mistaken reliance, legally erroneous reliance on the non-physician adjudicator's determinations. I think under this Court's precedent in Molina, the ALJ's reliance on the non-physician adjudicator's opinion was harmful. Molina, under Molina, this area is consequential, not inconsequential. Molina pointed to whether or not an error affected the substantial rights of the party in determining whether the error was harmful. Here, the ALJ's reliance on the non-physician adjudicator's determination affected Morgan's substantial right to a de novo hearing. It also affected her right to adjudication of her claim under the treating physician rule, the regulatory treating physician rule. But don't the regulations, the applicable regulations, say that when there is a non-treating person working in conjunction or where there's also a decision by a medical consultant, then the ALJ must consider those opinions. Because here it seems like this is what we had. We had the non-medical person plus the medical person. So it wasn't just the non-medical person alone, was it? No, in this particular case, Dr. Hoskins did affirm Dr. Hoskins' opinions are under the regulations and Social Security ruling 96-6P evidence, should be considered opinion evidence. However, it's for the ALJ in the first instance to weigh that evidence. The ALJ in this case did not. She did not, for example, weigh Dr. Hoskins' summary affirmation versus the detailed declarations of the two treating physicians. But the ALJ was obliged to consider that evidence, correct? The Rhodes and Hoskins evidence together he was required or she was required to consider. Is that right? ALJ is required to disregard in its entirety Mr. Rhodes' determination. Well, not when Dr. Hoskins is a doctor. I mean, in Gomez v. Chater, didn't we say that the ALJ could consider the nurse practitioner, the non-medical nurse practitioner, as long as she was working with a doctor? So I'm a little confused about why you think he was required to disregard it. Yes, that's a very, yes. In this case, an ALJ is not permitted to give any weight to a non-physician adjudicator's opinion because it's an adjudicative determination. A claimant has a statutory right to a de novo hearing, and that requires giving no weight whatsoever to a previous adjudicative finding. Now, the agency turns a certain adjudicative finding by a physician into a medical opinion via the regulations in SSR 966P. That's not the case for a non-physician adjudicator determination. You take a look at the agency's clarifying policy guidance, I think at page 743. I saw that you referred to a guidance document, but that's not binding, right? So is there a regulation on point? We've held that Palms and Halix are not binding on us. So we need to see a regulation or something along those lines. Is there one? Yes, there is, we think, directly. We have the regulation is 404, 20 CFR 404-953. The regulation in notice and comments to the regulation refers to a de novo hearing, an ALJ proceeding with a de novo hearing. And a de novo hearing means giving no weight to a prior adjudication at the ALJ level. And the commissioner has not disputed that the non-physician adjudicator determination is owed no weight. I believe this is a longstanding policy. The agency has had a recurrent problem with ALJs relying on these non-physician adjudicators as evidence. And because of that, has issued this correspondence. I'm sure that the ALJ may well have known this, but the confusion thinking this was a doctor is what caused the finding, presumably, correct? In other words, if you think it's a doctor, then you're not even thinking about the regulation about a non-adjudicative finding. Yes. We don't know what's in the mind of the ALJ, but for what the ALJ wrote here, and it's clear that she thought that Dr. Rhodes was a doctor. Exactly. And I think that a prior ALJ, this was a third ALJ decision in this case, a prior ALJ had made the same mistakes. So this is something that ALJs, we think, must get right. It's essential legal distinction between who is and who is not. Can I ask you about that? This is the third ALJ hearing for this woman. Yes. Is that right? And one of the other ALJs, it was actually sent back because of this at one point? No, it was raised to the Appeals Council. It was not the Appeals Council set it back for two or three other grounds. And so Ms. Morgan has been pressing this issue for a number of years, seeking for correction of erroneous reliance on the non-physician adjudicator's termination. Did you want to save your remaining time? Yes, I did. Thank you. Your Honors, Counsel, may it please the Court. My name is Lisa Goldoftus, and I represent the Commissioner of the Social Security Administration. I'd like to address the issue of the ALJ's error in referring to an opinion of a Dr. Rhodes rather than the opinion of Dr. Hoskins. And I'd like to clarify something that I unfortunately just discovered as I was looking through the record. At the record at 147 in the second ALJ decision, the ALJ again made the same mistake of calling the single decision-maker a physician, but did include the fact that Dr. Hoskins affirmed the single decision-maker. So while very often there's both a doctor doing the initial review and a doctor affirming that review, in this case the error was in assuming that the first person was a physician. And the Commissioner concedes that that was an error, but states that it was harmless. The problem I'm having, though, with your position is, are you asking us to affirm a decision that the ALJ in fact didn't make? I am not. I'm asking, this is a clerical error. The ALJ picked up the language from the second decision. Most of it is verbatim, but omitted the fact that it was affirmed by Dr. Hoskins. This wasn't a red flag. How can that be a clerical error? In other words, if the first person was wrong about whether this was a doctor or not, this ALJ has an obligation to make an independent determination, correct? Yes, but what I'm saying is that you do a cut-and-paste job of some other prior decision, that somehow exonerates you? I mean, to me that's the worst argument you could make, is that it's a clerical error, because that just suggests that the ALJ abdicated her responsibility. Well, Your Honor, the error is in, if she had in fact included the fact that Dr. Hoskins had affirmed it and had realized that and had seen that the first person was a single decision maker, which in the way that the Social Security deals with that is that wouldn't even be in the medical evidence if it's recognized, if it's only by a single decision maker. So it's in the medical evidence. The ALJ just made a mistake thinking that that was a doctor and then made a second mistake by not saying it was affirmed by a doctor, but it was affirmed by a doctor. First of all, what was in there was just this very conclusory check-check. So then Dr. Hoskins says, I affirm. We don't know what weight that means, because just affirming doesn't tell you, well, you have to look behind what's being affirmed. You have to see then what weight you should give that. So there's like a double layer of either credibility or substance you need to give the report, and we don't have the ALJ doing that. Your Honor, I understand your concern about the affirmance being short. That is the way that these are done. If you look at the record at ER 323, it's done exactly the same way with the mental residual function. It doesn't mean you just say, well, then you tell why you give it some weight. You don't just say, it's like with anything else, when you're explaining, well, this is why I look at that doctor's opinion and I give it substantial weight, or I discount the treating physicians because they didn't include A, B, and C in their treatment notes. But here we don't have any of that, because we don't ever have the ALJ making that determination. So I'm not saying the ALJ might not reach the same conclusion. I don't know. But I thought that one of the points on administrative review is that we can't read in things to the record. We've kind of been chastised on that on a couple occasions by the Supreme Court. I understand that, and I agree with that. But in this particular case, under the facts of this case, if this were to go back and a harmless error analysis were not applied, the ALJ could simply say this was affirmed by Dr. Hoskins. Whether it is a short affirmation or not, that is the way that these are done. And if you look at 323, it's done exactly the same way. While we might want the physicians to put more text in explaining why they're affirming, this is how the reviews are typically done, and that's what you see in these records. I think why you're so confident that that would be the case, that if it went back, the ALJ would simply say, I'm going to now rely on the findings of Dr. Hoskins. Because Dr. Hoskins, as a physician, did affirm them, and there is substantial evidence that supports this decision. Well, maybe we're missing each other. I'm trying to think. In the record, what is it that gives you the confidence that if the ALJ realized the error she made, she would still come out, there's no disability, even though she properly attributed the findings and assessment to Dr. Hoskins instead of Mr. Rhodes? The reason is because it wouldn't change the decision. It's the same evidence. It's just that a doctor adopted it instead of it coming from a single decision maker. Do you think the ALJ, and I guess I'm asking you to speculate, but would the ALJ be concerned that there was no analysis done by the medical doctor to give real meaning to Mr. Rhodes' findings? If I may speculate, I will say that this is often how it's done. This is how it was done with the psychological assessment. The fact that an opinion is prepared by somebody else and then co-signed by another medical source does not mean that they haven't adopted it. We see that throughout medical records. But, of course, in a psychological situation, there was really a whole report. I mean, there was a real extensive determination, correct? It was going through the form exactly the way that this was done, going through the RFC, summarizing some of the evidence. Summarizing some of the evidence. Right. And the single decision maker did summarize the evidence toward the end of the assessment. So unless... Well, I mean, it's not really our determination. Would it come out exactly the same? That's not quite where we put ourselves. I mean, we do find ourselves sometimes in these cases that it's almost a question to put to the claimant's counsel because they have to incur the time and expense to go back and have another look. But I thought one of the principles, of course, is we're really not supposed to put ourselves in that position. If it's improperly adopted, then the chips fall where they may on remand, correct? Yes, but if the same evidence is used and it's simply attributed with the correct names, then I'm having trouble seeing why there is not... But then doesn't it flow through the whole decision-making process? It's not like it's a stand-alone piece of evidence. So Dr. Hoskins is a non-treating physician, correct? That is correct. He's a state agency... State agency. ...consultative reviewing physician who's gone through the medical records, looked at what Dr. Son said. But then we treat him as, or we, they, the ALJ says, okay, this is a non-treating physician, and then there's a whole protocol of looking at that versus the treating. Correct, non-treating, non-examining. And the examining physicians. And so how do we know where it's going to shake out when you then add in a non-treating physician and the weight? I mean, this was given substantial weight. Correct. How do we know that it will be given substantial weight again? Because then it, doesn't it have to intersect with the other witnesses in the case? I'm sorry, Your Honor. I'm not following because as I see it, it is the same opinion. It just has the wrong attribution on it. Okay. I understand your point. And in my mind, that would be harmless error. And the court, clearly under Molina, could look at this as harmless error. Thank you. I wanted to also clarify a couple of things about the Step 5 determination. In this case, the GED level was a level 2, and the GED explains the educational equivalent for a particular job. In other words, it isn't necessarily the functional demands of the job that it is looking at. And in this case, given that Ms. Morgan had a 12th grade education and that she had done work that was significantly more complicated than that, it appears that the ALJ did properly find that she could do at least the work of GED 2, which would be the small products assembler. So at Step 5, there was no error, and the case should be affirmed on that basis. I also wanted to back up just a little bit about the physicians and the doctors, Eileen Olson and the ALJ's treatment of them. One issue that I think is extremely important in this case is that this is a case with a date less insured. The DLI of December 31, 2006. The majority of the evidence does come after that date. So after Exhibit 4F, the evidence was she saw physicians after that date, and two of them made retrospective opinions and then came back about a year later and said that they were retrospective actually to the prior DLI. There actually was opinion evidence from her treating rheumatologist, Dr. Son, that the ALJ considered, and substantial evidence does show that prior to the DLI, she was not disabled under the Act. So in evaluating the evidence, I did want to make that point, that it is her burden to establish a disability prior to the DLI. It is notable, as you pointed out, that this has been back for three hearings and three ALJ decisions, and I believe that the ALJ did conscientiously evaluate the evidence, but that Ms. Morgan did not meet her burden in showing that she was disabled prior to the DLI. I had a question, really looking back at some of our cases, and I believe these were cited either by you or by Ms. Morgan's counsel, like in Vertigon. One of the issues here is that she does do things. She does her laundry, she shops, et cetera, but she takes all day to do her laundry, for example. Looking at Vertigon, we had an individual there who was doing all kinds of things, walk an hour, go to the mall, swim, play cards with friends, that sort of thing. And we said, well, that kind of thing, it's not like that consumes a substantial part of your day, and therefore there's really not enough there to make that kind of credibility finding. And in the same vein, we said in this Molina case that the fact that you can do some of these things doesn't mean you can actually do a job, because some of these cooking and doing the laundry does not mean you can be a parts assembler. So I'd be interested in your comments on those cases. Well, I would like to point to Orrin, which says that the way that a person's daily activities are used can be either to show that they could do a job, or it could be to discredit their claims of total disability. Ms. Morgan had some very tragic incidents in her life, some very difficult circumstances that the ALJ did acknowledge. She was in pain. This is not somebody who isn't hurting. But the fact that somebody is in pain and the fact that somebody does have limitations doesn't mean that they can't work, even if they're not working. And even if they are watching television or spending a lot of time lying down, it is questionable whether is it physical or is it volitional or not. And it is very complicated, but I believe the ALJ did use it correctly, did use her activities, not to say those activities show that she could work, but to discredit her claims of total disability. I see I'm running out of time, and I did just want to reiterate that prior to the DLI, she has not met her burden to show that she was disabled under the Act, and I respectfully request that you apply the Harmless Error Standard to the SDM issue and that you affirm the Commissioner. Thank you. Thank you. Yes, I'd like to correct one legal error opposing counsel has made. She referred to the substantial evidence standard being relevant on court remand, if this court remanded. The preponderance of the evidence standard applies, 20 CFR 404.953. We believe Ms. Morgan has a very strong claim of disability under the preponderance of the evidence standard should this court remand. With regard to the issue of whether Ms. Morgan can work as an assembler, we rely on the plain language of both the ALJ's residual functional capacity assessment, referring to, quote, unquote, simple job instructions that parallels very closely with the definition of reasoning level one. The ALJ did not find that Ms. Morgan could perform any detailed work, and that corresponds with reasoning level two. The Eighth Circuit case of Huxley is directly on point. The Commissioner denigrates generally a reasoning level based upon Ms. Morgan's prior education. However, Ms. Morgan, even as the ALJ recognized, could no longer perform her past relevant work. She has a limited mental capacity by virtue of her anxiety, depression, and serious pain problems. Therefore, combined mental and physical impairment limit her to simple job instructions, which corresponds with the mental demands of reasoning level one work. Consistent with that, we have another parallel argument based upon Social Security Ruling 004-P. The ALJ did not obtain the required reasonable explanation from the vocational expert for the departure of his testimony from the DOT with respect to the reasoning level of the occupations identified. Clearly, the Commission Council concedes that Ms. Morgan cannot perform the reasoning level three occupation of mail clerk at step five. So on this record, it's pretty clear that the vocational expert did not consider a reasoning level. Thank you. Thank you.  I'd like to thank you both for the briefing, which was very helpful, and for your argument this morning. Our last case for argument will be Yakima Valley Memorial Hospital versus the Washington State Department of Health. You may proceed. Thank you.
judges: Carney, McKeown, Ikuta